FILED
CLERK

8/30/2016 12:39 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ROBERT CINCOTTA,

          Plaintiff,

     -against-

HEMPSTEAD UNION FREE SCHOOL
DISTRICT, BETTY J. CROSS, WAYLYN
HOBBS, JR., SHELLEY BRAZLEY,
BRANDON V. RAY, JOANN SIMMONS, and
SUSAN JOHNSON,

          Defendants.
--------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
15-cv-4821 (ADS)(AKT)

**APPEARANCES:**

**Leeds Brown Law, P.C.**
*Attorneys for the Plaintiff*
1 Old Country Road, Suite 347
Carle Place, NY 11514
    By: Sean M. O'Hara, Esq., Of Counsel

**The Scher Law Firm, LLP**
*Attorneys for the Defendants*
One Old Country Road, Suite 385
Carle Place, NY 11514
    By: Austin R. Graff, Esq., Of Counsel

**SPATT, District Judge**.

     This case arises from allegations by the Plaintiff Robert Cincotta (the "Plaintiff") that the

decision by his former employer, the Hempstead Union Free School District (the "District"), to

terminate his employment as the Director of Athletics and Physical Education was the product of

age and race discrimination and therefore, violated the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution and the New York State Human Rights Law, N.Y.

Exec. Law § 290 et seq. (the "NYSHRL").

     Presently before the Court is a motion by the Defendants the District, Betty J. Cross

("Cross"), Waylyn Hobbs, Jr. ("Hobbs"), Shelley Brazley ("Brazley"), Brandon V. Ray ("Ray"),

Joann Simmons ("Simmons"), and Susan Johnson ("Johnson" and collectively, the "Defendants") to dismiss the amended complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

For the reasons set for below, the Defendants' motion is denied in part and granted in part.

## I. BACKGROUND

### A. The Alleged Facts

The Plaintiff is currently a fifty-eight year old Caucasian male and a resident of Nassau County, New York.  (Am. Compl., Dkt. No. 11 [the "Am. Compl."] at ¶ 7.)  The District is a public school district organized under New York law with its principal place of business located in Hempstead, New York.  (Id. at ¶ 8.)

At the time of the Plaintiff's termination on June 21, 2013, the Defendant Johnson was the Superintendent of the District.  (Id. at ¶ 11.)  Cross was the President of the District's Board of Education (the "Board"); Hobbs was the "1st Vice President" of the Board; Brazley was the Treasurer of the Board; and Ray and Simmons were Trustees of the Board.  (See id. at ¶¶ 10, 29.)

In September 1985, the District appointed the Plaintiff to a position as a full-time Physical Education and Health Education teacher.  (Id. at ¶ 13.)  In September 1988, the Plaintiff received tenure for his position.  (Id. at ¶ 14.)  The amended complaint does not specify what tenure means in this context.

On September 2, 2005, the District promoted the Plaintiff to Director of Athletics and Physical Education.  (Id. at ¶ 15.)  On July 15, 2008, the District granted the Plaintiff a tenured appointment as the Director of Athletics and Physical Education, which became effective on September 1, 2008.  (Id. at ¶ 16.)

At unspecified times during the 2011 to 2013 school years, the Plaintiff was compelled to observe the District's football games from the press-box, not the side-lines, because "the sun was causing physical manifestations of complications with his diabetes." (Id. at ¶ 18.) It is alleged by the Plaintiff that during these occasions, two custodial officials and two cheerleading advisors — who are all African American — commented to the Plaintiff: "You can't take the heat"; "You're too white to be out in the sun"; and "You need to be black like us." (Id.)

During the 2012 to 2013 school years, the District's Board appointed Johnson, who is African American, as the Superintendent of the District. (Id. at ¶ 19.) Allegedly, under Johnson's supervision, the District hired African Americans to the majority of positions within the District's Central Office administration. (Id. at ¶ 20.)

Allegedly, the District had a policy that athletes who were failing two or more classes were not eligible to participate on the District's sports teams. (Id. at ¶ 21.) In February 2013, the Plaintiff allegedly informed the District's Athletics Department staff and the principals of the District's middle and high schools that he planned on enforcing this policy. (Id. at ¶ 23.)

Subsequently, Robert Brazley, the Special Assistant to the Superintendent, called the Plaintiff and allegedly accused him of being a racist and "trying to hurt black kids." (Id.) He also allegedly told the Plaintiff to "stay in his office" because Johnson was going to "straighten him out." (Id.)

On May 6, 2013, Johnson informed the Plaintiff that she was going to recommend to the Board that the Plaintiff's position as Director of Athletics and Physical Education be eliminated for economic reasons. (Id. at ¶ 24.) On the same day, the District posted job announcements for the positions of Director of Social Studies and the Director of Science, Technology, and

Engineering.  (Id. at ¶ 25.)  The amended complaint states that these positions "were not included in the 2013/14 budget."  (Id.)

On May 30, 2013, Johnson sent a memorandum to the Plaintiff informing him that at the June 30, 2013 Board meeting, she planned to recommend that the Plaintiff's position be eliminated due to budgetary limitations.  (Id. at ¶ 26.)

On June 5, 2013, the District hosted its annual sports awards dinner.  (Id. at ¶ 27.)  The Plaintiff, Cross, and Jeanne Collins, the Athletic Department Secretary ("Collins"), were among the attendees.  (Id.)  During the dinner, the Plaintiff overhead Cross ask Collins about the Plaintiff's age and length of service with the District.  (Id.)  Collins allegedly responded that the Plaintiff needed two more years before he could retire, presumably with a pension, though the amended complaint does not make this clear.  (Id.)  Apparently, Cross responded, "We gotta get rid of [the Plaintiff]."  (Id.)

On June 13, 2013, the District posted a job announcement for Assistant Superintendent of Special Education, a position which was also apparently not included in the District's 2013 and 2014 budget.  (Id. at ¶ 28.)

On June 20, 2013, the Board held a meeting to vote on whether to eliminate the Plaintiff's position.  (Id. at ¶ 29.)  Cross, Hobbs, Brazley, Ray, and Simmons were the Board members present at the meeting, and they all voted to eliminate the Plaintiff's position effective as of June 21, 2013, the following day.  (Id.)

On September 30, 2013, the Plaintiff contacted Mary Cash ("Cash"), the District's Benefits Manager, to inquire about whether the District would continue to provide him with healthcare coverage.  (Id. at ¶ 31.)  Cash allegedly responded that the Superintendent's Office

"was complaining about [the] Plaintiff receiving medical coverage[] because he 'was old enough to get Medicare.'"  (Id.)

Following the Plaintiff's termination, the District appointed Barbara Intrieri ("Intrieri"), who was allegedly younger and less qualified than the Plaintiff, to be the Director of Physical Education.  (Id. at ¶ 32.)  According to the amended complaint, the District currently pays Intrieri more money than the Plaintiff had previously earned while acting as Director of Athletics and Physical Education.  (Id. at ¶ 33.)

In addition, from Fall 2012 to the Spring 2013, the District also terminated the following Caucasian employees: Stephanie Clagnaz, the Assistant Superintendent; Peter Cavassa, Director of Facilities; Dr. Sheryl Shidet, a Principal; and David Evans, a Principal.  (Id. at ¶ 37.)

## B. The Procedural History

On September 19, 2013, the Plaintiff sent the District a Notice of Claim asserting claims against the District for race, age, and disability discrimination in connection with the District's decision to terminate his employment.  (See the Dec. 3, 2015 Not. of Claim, Dkt. No. 14–13, Graff Aff., Ex. F [the "Not. Of Claim"] at 1.)

At an unspecified time, the District apparently requested an administrative hearing pursuant to Section 50-h of the New York General Municipal Law.  Under that statute, municipal entities, including school districts, have a "right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made . . . ." N.Y. Gen. Mun. § 50-h(1).  These hearings are sometimes referred to as 50-h hearing.

According to the amended complaint, on October 11, 2013, the District held a 50-h hearing.  (See Am. Compl. at ¶ 5.)  Following the hearing, the District declined to settle the Plaintiff's claims.

On May 29, 2014, the Plaintiff filed a complaint against the District with the New York State Division of Human Rights ("NYSDHR"), asserting claims for race, age, and disability discrimination.  (See May 29, 2014 NYSDHR Complaint, Graff Aff., Dkt. No. 14–13, Ex. E ["NYSDHR Complaint"].)  On the same day, the Plaintiff filed a charge with the EEOC.  (See EEOC's June 11, 2014 Notice of Charge, Graff Aff., Ex. E, Dkt. No. 14–12 [the "Notice of Charge"].)

According to the amended complaint, on October 6, 2014, the Plaintiff applied for an open position as the Dean of Students for the District.  (Am Compl. at ¶ 39.)  The District did not hire the Plaintiff and instead hired O'Neil Glenn ("Glenn").  Glenn is an African American, and at the time of his hiring, was younger and apparently less experienced than the Plaintiff.  (Id.)

Allegedly, at unspecified times following the Plaintiff's termination, the District also appointed additional African Americans individuals to administrative positions, including: Johnetta Hill, who became the District's Athletic Director; Rachel Blount and Carey Gray, who became High School Assistant Principals; and Betsy Benedith, who became a High School Dean. (Id. at ¶¶ 32, 36.)  The Court notes that the Plaintiff does not appear to have applied for these positions.

On November 25, 2014, the NYSDHR determined that probable cause existed to believe that the District had engaged in unlawful discriminatory practices.  (Id. at ¶ 40.)

On March 20, 2015, the Plaintiff applied for two open positions at the District for Enrollment Ombudsman and Assistant Enrollment Ombudsman.  (Id. at ¶¶ 41–42.)  The Plaintiff was not hired for either position.  (Id.)

On April 8, 2015, at the Plaintiff's request, the NYSDHR dismissed the Plaintiff's complaint and issued to him a right to sue letter so that he could pursue his claims in federal court.  (Id. at ¶ 43.)

On May 19, 2015, the EEOC dismissed the Plaintiff's charge and issued a right to sue letter.  (See the EEOC Right to Sue Letter, Graff's Jan. 28, 2016 Aff., Dkt. No. 31–3, Ex. I [the "EEOC Right to Sue Letter"].)

On May 26, 2015, the Plaintiff applied to open positions in the District for Elementary School Principal and Middle School Principal.  (Id. at ¶¶ 44–45.)  Again, the District did not hire the Plaintiff for either position.  (Id.)

On August 17, 2015, the Plaintiff commenced this action against the District by filing a complaint.  (See Orig. Compl., Dkt. No. 1 [the "Orig. Compl."].)  He asserted eight separate causes of action for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("AEDA") and the NYSHRL; race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII") and the NYSHRL; retaliation in violation of Title VII and the NYSHRL; and disability discrimination in violation of the Americans with Disability Act, 42 U.S.C. 12111 et seq. ("ADA") and the NYSHRL.  (Id. at ¶¶ 38–52.)  In connection with these claims, he sought compensatory damages; liquidated damages; back pay; front pay; general and special damages to compensate him for lost compensation and benefits; punitive damages; attorneys' fees; interest; and costs. (Id. at ¶¶ 54–64.)

On August 20, 2015, the Board allegedly voted to recall the Plaintiff to his previously held position, effective as of August 31, 2015.  (Am Compl. at ¶ 47.)  The amended complaint

does not make clear whether the Plaintiff was formally reinstated to his prior position, nor whether the Plaintiff is currently employed by the District.

On October 21, 2015, the District filed motion pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6) to dismiss the original complaint. (See the District's Oct. 21, 2015 Mot. to Dismiss, Dkt. No. 7 [the "District's First Motion to Dismiss"].) In its memorandum of law, the District asserted that the Plaintiff's federal and state discrimination claims were all time-barred. (See id. at 1–8.)

On November 3, 2015, the Court so-ordered a stipulation by the parties to extend the Plaintiff's time to respond to the District's motion from November 4, 2015 to November 18, 2015. (See Nov. 3, 2015 Stipulation, Dkt. No. 9.)

On November 18, 2015, the Plaintiff filed an amended complaint adding as named Defendants Cross, Hobbs, Brazley, Ray, Simmons, and Johnson (collectively, the "Individual Defendants"). In addition, the Plaintiff withdrew his claims under Title VII, the ADEA, the ADA. (See Am. Compl. at ¶¶ 48–53.) He added a claim under 42 U.S.C. § 1983 ("Section 1983"), asserting that the Defendants violated his Fourteenth Amendment rights "by engaging in unlawful discriminatory practices by its policymakers in voting to terminate the Plaintiff." (Id. at ¶ 48–50.) In addition, he continued to assert that the Defendants violated Section 296 of the NYSHRL "by engaging in unlawful discriminatory practices in voting to approve the termination of the Plaintiff." (Id. at ¶ 51.)

On November 25, 2015, the Defendants filed a letter request to withdraw their Rule 12(b)(6) motion to dismiss without prejudice in light of the amended complaint, which request the Court so-ordered on April 4, 2016. (See Dkt. Nos. 12, 33.)

## C. The Present Motion

On December 3, 2015, the Defendants filed a motion to dismiss the amended complaint pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6). (See the Defs.' Dec. 3, 2015 Mem. of Law in Support of their Second Mot. to Dismiss, Dkt. No. 14 [the "Defs.' Mem. of Law"].) In support, the Defendants asserted that the Plaintiff did not properly serve the Individual Defendants with a summons and therefore, the complaint should be dismissed for insufficient service of process. (See id. at 2–4.)

With regard to the Section 1983 claims, the Defendants contended that the amended complaint attempted to re-frame the Plaintiff's Title VII claims as Section 1983 claims to avoid the Title VII statute of limitations. (See id. at 4–6.) As such, the Defendants urged the Court to apply the Title VII statute of limitations to the Plaintiff's Section 1983 claims and dismiss the claims as time-barred. (See id.) They also claimed that the Section 1983 claims against the Individual Defendants should be dismissed because they enjoy absolute legislative immunity for their votes to terminate the Plaintiff's position. (Id. at 9–10.) Further, even if not immune, they proffered that the amended complaint failed to plausibly allege the requisite personal involvement to state a Section 1983 claim against Johnson. (Id. at 10.)

With regard to the NYSHRL claims, the Defendants asserted that the claims are time-barred and that the Plaintiff failed to comply with the notice of claim requirement applicable to state law claims against school districts and officers of school districts. (See id. at 6–8.)

On December 7, 2015, the Clerk of the Court issued a summons to the Defendants. (See Summons, Dkt. No. 17.) On December 23, 2015, the Plaintiff filed affidavits of service stating that a copy of the amended complaint and summons was served on the District's authorized

agent; personally served on the Individual Defendants' co-worker; and separately mailed to each Individual Defendant.  (See Dkt. No. 20–26.)

On January 8, 2016, the Plaintiff filed a memorandum in opposition to the Defendants' motion to dismiss, asserting that (i) the Individual Defendants were properly served with a copy of the amended complaint and summons; (ii) the Plaintiff had adequately asserted Section 1983 claims for the violation of his Fourteenth Amendment rights and the violation of 42 U.S.C. § 1981 ("Section 1981"); (iii) his NYSHRL claims were timely because the statute of limitations was tolled when the Plaintiff filed a charge with the NYSDHR; (iv) the Plaintiff was not required to file a notice of claim because his NYHSRL claims fell under an alleged indemnification exception to the requirement, and because the Individual Defendants received constructive notice of the Plaintiff's claims during the 50-h hearing; (v) the Individual Defendants are not subject to legislative immunity for their vote terminate the Plaintiff because they were exercising an administrative function; and (vi) the amended complaint sufficiently alleges Johnson's involvement in the purported discriminatory practices of the District.  (See the Pl.'s Opp'n Mem. of Law, Dkt. No. 27, at 8–24.)

On January 28, 2016, the Defendants filed a reply brief in further support of their motion to dismiss.  (See the Defs.' Reply Mem. of Law, Dkt. No. 31–4 [the "Defs.' Reply Mem. of Law"].)  In their memorandum, they did not address their earlier argument that the amended complaint should be dismissed against the Individual Defendants for insufficient service of process.  (See id.)  In addition, they asserted for the first time, that the Plaintiff's amended complaint was untimely under Rule 15(a) and therefore, required leave of the Court.  (See id. at 3.)  They also appeared to assert for the first time that the Section 1983 claims against *all* of the

Individual Defendants, not just Johnson, failed to plausibly plead their personal involvement in the District's alleged discriminatory acts.  (Id. at 5–6.)

The Court will now address the applicable legal standards, and the parties' procedural and substantive arguments.

## II. DISCUSSION

### A. As to the Service of Process Arguments

As an initial matter, the Defendants contended in their December 3, 2015 motion to dismiss that the Plaintiff failed to serve a summons on the Individual Defendants and therefore, the claims against the Individual Defendants should be dismissed under Rules 12(b)(4) and 12(b)(5) for insufficient service of process.  (See the Defs' Second Mot. to Dismiss at 2–4.)

Subsequently, on December 7, 2015, the Clerk of the Court issued a summons as to the Defendants in connection with the amended complaint.  And, on December 23, 2015, the Plaintiff filed separate affidavits by a process server attesting to the service of copies of the amended complaint and summons on each of the Defendants, either through an authorized agent or through substituted service.  (See Dkt. Nos. 17, 20–26.)

In their opposition memorandum, the Plaintiff argued that these affidavits of service mooted the Defendants' service of process arguments.  (See id. at 8–9.)

In their reply memorandum, the Defendants do not contest that the Plaintiff has adequately served them and appear to abandon their service of process arguments.  However, even if not abandoned, the Court agrees with the Plaintiff that the Defendants' motion is moot.

Rule 4(c) states in relevant part:

A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

Fed. R. Civ. P. 4(c)(1).

At the time the Plaintiff filed the amended complaint, Rule 4(m) required a plaintiff to serve a defendant within 120 days after the complaint was filed.  On December 1, 2016, the Advisory Committee amended the time-limit within which to serve a defendant from 120 days to 90 days.  See Fed. R. Civ. P. 4(m).

'"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."'  Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987) (quoting Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444–445, 66 S. Ct. 242, 245–246, 90 L. Ed. 185 (1946)).  "A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."  Tolliver v. Lilley, No. 12-CV-971 (DAB) (KNF), 2014 WL 10447163, at *6 (S.D.N.Y. Oct. 24, 2014) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004)), *report and recommendation adopted sub nom.*, Tolliver v. Skinner, No. 12 CIV. 971 DAB, 2015 WL 5660440 (S.D.N.Y. Sept. 25, 2015)).

Until the time-limit for service set forth in Rule 4(m) has expired, a Rule 12(b)(5) motion for insufficient service of process is premature.  See Omobude v. Mississippi Dep't of Fin. & Admin., No. 3:10CV703 (TSL) (FKB), 2011 WL 346522, at *1 (S.D. Miss. Jan. 31, 2011) ("[P]ursuant to Federal Rule of Civil Procedure 4(m), the plaintiff has 120 days from the date the complaint is filed to effect service, and 'until that 120–day period has expired, any attempt to seek dismissal on the grounds of defective service clearly [is] premature.'") (quoting McGinnis v. Shalala, 2 F.3d 548, 551 (5th Cir. 1993)).  That is because even if service was improper at the time the plaintiff filed a complaint, a plaintiff may cure those deficiencies at any time within the

time period provided for in Rule 4(m).  <u>See</u> Fed. R. Civ. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m).").

Thus, where, as here, a plaintiff timely cures deficiencies in service of process, courts have denied Rule 12(b)(5) motions to dismiss the complaint for insufficient service of process as premature or moot.  <u>See, e.g.,</u> <u>Burdick v. Oswego Cty., NY</u>, No. 5:15-CV-00353 (MAD), 2015 WL 6554515, at *4 (N.D.N.Y. Oct. 29, 2015) (denying Rule 12(b)(5) motion to dismiss even though the plaintiff's initial service of process was improper because the plaintiff subsequently cured the deficiency within 120 days of filing the complaint); <u>Joiner v. Chartwells</u>, No. CIVA3:05CV845(JCH), 2005 WL 3499994, at *2 (D. Conn. Dec. 20, 2005) ("While the service upon these defendants may have been insufficient at the time that the defendants moved to dismiss Joiner's suit, Joiner has since perfected service on each of these defendants . . . within the time period provided in Rule 4(m) . . . . Accordingly, the defendants' motion to dismiss under Rule 12(b)(5) is denied as moot.").

Similarly, in this case, the Plaintiff had not served copies of a summons and the amended complaint on the Individual Defendants prior to the Defendants' filing of their Rule 12(b)(5) motion to dismiss on December 3, 2015.  However, on December 23, 2015, 32 days after filing the amended complaint, the Plaintiff filed affidavits from his process server indicating that he had personally served copies of the summons and complaint on a co-worker of the Individual Defendants and mailed copies to each of the Individual Defendants.  The Defendants do not contest the adequacy of this substituted service, and service was clearly made within the 120-day period provided for in the prior version of Rule 4(m).  Accordingly, the Court denies the Plaintiff's motion to dismiss the amended complaint as against the Individual Defendants for insufficient service of process as moot.

13

**B. As to Amendments under Rule 15**

The Defendants also argue for the first time in their reply brief that the Court should strike the Plaintiff's amended complaint because the Plaintiff did not file it within the periods provided for in Rule 15(a)(1), nor did he seek leave of the Court pursuant to Rule 15(a)(2) prior to filing his amended complaint.  (See the Defs.' Reply Mem. of Law at 2–3.)

It is well-established in this Circuit that to prevent unfairness to a movant's adversary, "new arguments may not be made in a reply brief[.]"  Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) (Per Curiam); see also In re Harris, 464 F.3d 263, 268 n.3 (2d Cir. 2006) ("We generally do not consider issues raised in a reply brief for the first time, . . . because if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it.") (internal quotations marks and citations omitted); United States v. Townsend, No. 15-CR-653 (DLI), 2016 WL 3562055, at *3 (E.D.N.Y. June 23, 2016) (same).

Here, the Defendants did not contend in their opening brief that the amended complaint should be dismissed as untimely, even though they could have easily raised such an argument. Rather, they raised the issue for the first time in their reply brief.  As such, the Court is entitled to disregard — and does— disregard the Defendants' argument as procedurally improper.

Furthermore, even if not disregarded, the Court finds the Defendants' argument to lack merit.  The Defendants are correct that under Rule 15(a)(1), a plaintiff can amend his complaint once as a matter of course within 21 days after the service of a Rule 12(b) motion.  See Fed. R. Civ. P. 15(a)(1)(B).  For any amendment outside of the 21-day period, the plaintiff must obtain the opposing party's consent or the court's leave, which the Rule states should be "freely give[n] when justice so requires."  See id. at 15(a)(2).

14

They are also correct that it is undisputed that the Plaintiff filed the amended complaint on November 18, 2015, which was twenty-seven days after the Defendants filed their first motion to dismiss on October 21, 2015.  However, the Court so-ordered a stipulation signed by the parties extending the Plaintiff's period within which to respond to the Defendants' motion to dismiss to November 18, 2015, and thus, appeared to consent to an extension of the 21-day period.  In addition, on November 25, 2015, seven days after the filing the amended complaint, the Defendants filed a letter withdrawing their motion to dismiss the original complaint without prejudice and in so doing, appeared to indicate an intent to litigate the merits of the amended complaint.  Thus, it was entirely reasonable for the Plaintiff to believe that the Defendants had consented to enlarging his time to file the amended complaint to November 18, 2015.

Furthermore, the Defendants point to no prejudice or any other ground on which the Court would have denied the Plaintiff leave to amend had they requested it under Rule 15(a)(2).  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) ("'[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment' will serve to prevent an amendment prior to trial.") (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962)).  Therefore, the Defendants were clearly on notice of the Plaintiff's claims and leave to replead would have been granted under Rule 15(a)(2) had it been sought.

For these reasons, the Court declines the Defendants' invitation to strike the amended complaint as procedurally improper.

**C. As to the Rule 12(b)(6) Motion**

As noted earlier, the Defendants also move under Rule 12(b)(6) to dismiss the amended complaint.   Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss complaint that "fail[s] to state a claim upon which relief can be granted."   When ruling on such a motion, the court "'accept[s] all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"   LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003)).

However, to survive a 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted).   Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 570 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).   Accordingly, unless plaintiffs' well-pleaded allegations have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 569.

In considering a motion to dismiss, a court is generally "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits,

and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)). "[W]here matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citing Fed. R. Civ. P. 12(d)).

Here, in support of their Rule 12(b)(6) motion, the Defendants attached the charge that the Plaintiff filed with the NYSDHR; the Notice of Claim he served on the District; and the right to sue letters issued to the Plaintiff by the EEOC and the NYSDHR. In addition, the Plaintiff attached to a copy of the hearing transcript of the 50-h hearing.

All of these documents were explicitly referred to in the amended complaint. (See Am. Compl. at ¶¶ 5, 38, 43.) Although the Plaintiff did not attach them to his amended complaint, the Court considers them as incorporated by reference in the amended complaint. Thus, the Court may consider them in ruling on the Defendants' Rule 12(b)(6) motion. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.") (citation omitted); Done v. HSBC Bank USA, No. 09-CV-4878 (JFB) (ARL), 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010) (considering, on a Rule 12(b)(6) motion, documents submitted by both plaintiff and defendant to be "incorporated by reference" into the complaint); Peters v. Molloy College of Rockville Centre, No. 07–CV–2553 (DRH)(ETB), 2008 WL 2704920, at *2 n. 2 (E.D.N.Y. July 8, 2008) ("Plaintiff's grade appeal,

which Defendants submitted as part of their motion papers, is properly before the Court on this Rule 12(b)(6) motion as it is incorporated by reference in the Complaint.").

**D. As to the Plaintiff's Section 1983 Claims**

### 1. Timeliness and Preemption

"For § 1983 actions arising in New York, the statute of limitations is three years." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (citing Owens v. Okure, 488 U.S. 235, 250–51, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989)).  The three-year statute of limitations begins to run when the plaintiff "knew or should have known of the discriminatory action." Washington v. Cty. of Rockland, 373 F.3d 310, 319 (2d Cir. 2004); see also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996) ("The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action.").

Here, the amended complaint alleges that the Defendants violated Section 1983 by "engaging in unlawful discriminatory practices in voting to terminate [the] Plaintiff."  (Am. Compl. at ¶¶ 49–50.)  The Board voted to terminate the Plaintiff on June 20, 2013.  (Id. at ¶ 29.)  Thus, any Section 1983 claims arising from that termination must have been brought on or before June 20, 2016.  The Plaintiff initiated this action on August 17, 2015, well within the three-year statute of limitations period.  Thus, at first glance, the Plaintiff's Section 1983 claims do not appear to be time-barred.

In their present motion, the Defendants do not dispute that the Plaintiff's Section 1983 claims are within the Section 1983 limitations period.  However, they argue that the Plaintiff's Section 1983 claims are improper because the Plaintiff's claims are time-barred under the Title VII statute of limitations.  (See the Defs.' Mem. of Law at 4–6.)

In that regard, Title VII requires an aggrieved employee to file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). However, if initially institutes the proceeding in a State or local agency, such as the NYSDHR, then a "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier." Id.; see also Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999) ("[Title VII] requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act, unless the 'person aggrieved has initially instituted proceedings with a State . . . agency with authority to grant or seek relief from such practice,' in which case the claimant has 300 days to file his charge with the EEOC.") (quoting 42 U.S.C. § 2000e-5(e)(1)). "This statutory requirement is analogous to a statute of limitations." Van Zant, 80 F.3d at 712 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S. Ct. 1127, 1133, 71 L.Ed.2d 234 (1982)).

The same requirements are applicable to the ADA and the ADEA. See 42 U.S.C. § 12117(a)(ADA); 29 U.S.C. § 626(d)(1) (ADEA); see also Valtchev v. City of New York, 400 F. App'x 586, 588 (2d Cir. 2010) (Summary Order) ("The ADA, ADEA, and Title VII require claimants to file a charge of discrimination or retaliation with the United States Equal Employment Opportunity Commission ('EEOC') within 300 days of the discriminatory or retaliatory act.").

Here, the Plaintiff filed a charge of discrimination with both the NYSDHR and the EEOC on May 29, 2014, which is 343 days after the Board's vote to terminate the Plaintiff on June 20,

2013.  Thus, absent an exception, the Defendants are correct that if the Plaintiff had brought his claims under Title VII, the ADA, or the ADEA, they likely would have been time-barred.

However, the Plaintiff does *not* assert a claim under Title VII, the ADEA, or the ADA. He asserts a claim under Section 1983.  Thus, the fact that the Plaintiff's claims are time-barred under a different statute does not appear relevant to the viability of his claims under Section 1983.

The Defendants contend otherwise.  They assert that the only reason that the Plaintiff amended his complaint to include Section 1983 claims was to avoid the 300-day statute of limitations periods under the federal discrimination statutes.  (See the Defs.' Mem. of Law at 4–5.)  They contend that this practice is improper because a Section 1983 claim must be based on the violation of a right conferred under a statute or constitutional provision other than the federal discrimination statutes.  (See id.)

For their part, the Plaintiff contends that the amended complaint adequately pleads Section 1983 claims for the violation of his rights under Section 1981 and the Equal Protection Clause of the Fourteenth Amendment.  (See the Pl.'s Opp'n Mem. of Law at 17.)  The Court agrees that the Plaintiff pleads a separate violation of his Fourteenth Amendment rights, and therefore, his Section 1983 claims appear viable.

Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Interpreting this language, the Supreme Court has stated that Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979).   Thus, a pre-requisite to a stating a Section 1983 claim are allegations that a plaintiff suffered "a denial of her federal statutory rights, or her constitutional rights or privileges." Annis v. Cty. of Westchester, 136 F.3d 239, 245 (2d Cir. 1998).

However, "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004).  That said, in this Circuit, it is well-established that "'[a] Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal protection, 'so long as the § 1983 claim is based on a distinct violation of a constitutional right.'"  Id. (quoting Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir. 1994)).

In his opposition memorandum, the Plaintiff points to Section 1981 and the Equal Protection Clause of the Fourteenth Amendment as the sources of his rights that the Defendants have allegedly violated for purposes of asserting a Section 1983 claim. (See the Pl.'s Opp'n Mem. of Law at 17.)

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson, 375 F.3d at 224.  A violation of Section 1981 can form the basis of a valid Section 1983 claim. "Indeed, 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units ....'"

21

Id. (alterations in original) (quoting Jett v. Dallas Independent School District, 491 U.S. 701, 733, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989)).  However, the amended complaint does not mention or refer to Section 1981.  Therefore, the Court finds no support for the Plaintiff's contention that he alleges a cognizable violation of Section 1981 that can provide a basis for a Section 1983 claim.

However, as described below, the Court agrees that the Plaintiff pleads a separate violation of his Fourteenth Amendment rights, and therefore, his Section 1983 claims are viable at this stage of the litigation.

The amended complaint states that "[t]his action is brought against Defendant[s] . . . . for their violations of the Fourteenth Amendment to the United States Constitution (as enforced by 42 U.S.C. § 1983."  (Am. Compl. at ¶¶ 1–2.)  It then goes on to allege that the Individual Defendants and other employees made race-based and age-based comments directed toward the Plaintiff, and delegated the Plaintiff's responsibilities following his termination to a younger employee and an African American employee, respectively. (See id. at ¶¶ 18, 32, 36–37.)

Allegations of discrimination based on race or gender discrimination may form the basis of Section 1983 claims predicated on the violation of a plaintiff's rights under the Equal Protection clause of the Fourteenth Amendment.  Indeed, "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause."  Patterson, 375 F.3d 206, 225 (2d Cir. 2004) (finding that a plaintiff could assert separate claims under Title VII and Section 1983 for race discrimination); Saulpaugh, 4 F.3d at 143 (finding that allegations of the sexual harassment of women could constitute a viable

disparate treatment claim under Title VII and a Section 1983 claim based on the violation of the Equal Protection Clause).

The Second Circuit has not directly addressed the issue of whether the ADEA preempts age discrimination claims based on a violation of the Equal Protection Clause and brought under Section 1983.  See Piccone v. Town of Webster, 511 F. App'x 63, 64 (2d Cir. 2013) (Summary Order) ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983.  However, because we find that Plaintiff's claim fails at McDonnell Douglas step one, we decline to address the preemption issue here."); Butts v. NYC Dep't of Hous. Pres. & Dev., 307 F. App'x 596, 598 n.1 (2d Cir. 2009) (Summary Order) (same). "However, [lower] courts within the Second Circuit have consistently held that the ADEA does not preclude age discrimination actions brought pursuant to Section 1983, so long as such claims are brought to vindicate distinct violations of constitutional rights."  Wu v. Metro-N. Commuter R.R., No. 14CV7015 (LTS) (FM), 2015 WL 5567043, at *9 (S.D.N.Y. Sept. 22, 2015) (collecting cases); Volpi v. Ctr. Moriches Union Free Sch. Dist., 9 F. Supp. 3d 255, 257 (E.D.N.Y. 2014) (same); Norgrove v. New York City Dep't of Educ., No. 08-CV-2202 (FB) (MDG), 2011 WL 441678, at *2 n.1 (E.D.N.Y. Feb. 8, 2011) ("'[T]he weight of authority in the Second Circuit favors the position that the ADEA does not preempt claims under § 1983 for age discrimination,'. . . , the Court will assume for the purpose of deciding this motion that Norgrove's age discrimination claim is not preempted by the ADEA.") (quoting Poppas v. New York City Bd. of Educ., No. 07–CV–4312, 2011 WL 128509, at *1 (E.D.N.Y. Jan. 14, 2011)).

Therefore, relying on the cases discussed above, the Court finds that a plaintiff can assert that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated by

23

allegations of racial and age discrimination and by extension, can assert Section 1983 claims on that basis.

Here, in their reply memoranda, the Defendants state, "The Defendants do not argue the sufficiency of the Plaintiff's pleading regarding his 42 U.S.C. § 1983 claim, but instead argue that the assertion of the claim was a substitute for the Plaintiff's untimely Title VII claim." (The Defs.' Reply Mem. of Law at 1.) Thus, the Defendants do not challenge the sufficiency of the Plaintiff's constitutional claims, but rather, focus on his subjective motivations in bringing Section 1983 claims, rather than Title VII claims.

At this junction, the Plaintiff's subjective motivations are irrelevant. Rather, the operative question is whether some law other than Title VII or the ADEA, such as the Equal Protection clause, is the source of the right alleged to have been denied. See Saulpaugh, 4 F.3d at 143 ("A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, . . . , but a plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied.") (emphasis added).

The amended complaint does identify a source of law other than Title VII or the ADEA as the basis for his Section 1983 claims — namely, the Fourteenth Amendment. It states, "This action is brought against [the Defendant] for [their] violation of the Fourteenth Amendment to the United States Constitution (as enforced by 42 U.S.C. § 1983)[.]" (See Am. Compl. at ¶¶ 1–2.) The pleading does not specifically identify the Equal Protection Clause of the Fourteenth Amendment. However, the Court finds that the reference to the Fourteenth Amendment, as well as the disparate treatment alleged in the amended complaint, put the Defendants on sufficient notice that the Plaintiff is in effect asserting a violation of his Equal Protection rights under the guise of Section 1983.

Further, based on the Defendants' concession in their reply brief, it appears undisputed that the Plaintiff sufficiently alleges that the Defendants' action violated his Fourteenth Amendment rights.  Therefore, the Court finds that the Plaintiff may plead a Section 1983 claim based on the violation of his Fourteenth Amendment rights, regardless of whether he could have asserted a similar claim under Title VII or the ADEA.  Accordingly, the Defendants' motion to dismiss the Plaintiff's Section 1983 claims on this basis is denied.  See Worrell v. Cortines, No. 90-CV-3142 (JG), 1995 WL 1079717, at *9 (E.D.N.Y. Mar. 26, 1995) ("Worrell claims that her allegations of violations by the individual defendants of 42 U.S.C. § 1983 are based on violations of federal rights other than those protected by Title VII. Specifically, plaintiff claims that her § 1983 claim is based on violations of her rights under the fourteenth amendment to the United States Constitution . . . . Since Worrell has based her § 1983 claim on rights other than those created by Title VII, the § 1983 claims will not be dismissed on this basis."); Taylor v. Brentwood Union Free Sch. Dist., 908 F. Supp. 1165, 1180 (E.D.N.Y. 1995) (rejecting a school district's contention that a plaintiff's Section 1983 and Section 1985 claims were barred because the plaintiff failed to pursue a remedy under Title VII).

### 2. Legislative Immunity

The Defendants next contend that the Plaintiff's Section 1983 claims against the Individual Defendants should be dismissed because the Individual Defendants are entitled to absolute legislative immunity.  (See the Defs.' Mem. of Law at 9–10.)

In response, the Plaintiff asserts that the Individual Defendants' action in voting to terminate the Plaintiff's position was administrative in nature and therefore, they are not entitled to legislative immunity.  (See the Pl.'s Opp'n Mem. of Law at 23.)  The Court agrees.

"The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo–American law."  Bogan v. Scott-Harris, 523 U.S. 44, 48, 118 S. Ct. 966, 970, 140 L. Ed. 2d 79 (1998).  The Supreme Court has extended absolute immunity to local legislators, as well as administrative employees, and held that they are "absolutely immune from suit under § 1983 for their legislative activities."  Id. at 49, 118 S. Ct. 970; see also Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003) ("This Circuit has previously held that absolute legislative immunity for Section 1983 actions extends to local legislators.").

The test for absolute immunity is functional.  "[T]he first step in the inquiry whether the Board members' actions were legislative in function."  Id.  For example, in Bogan v. Scott-Harris, supra, a mayor recommended to the city council that the plaintiff's agency, of which she was the sole employee, be eliminated as part of a budget proposal that included the elimination of 135 other city positions.  See 523 U.S. at 46, 118 S. Ct. at 969.  The plaintiff brought suit for discrimination under Section 1983 against the city, the mayor, and the chair of the city council.  See id.  Following a jury verdict in favor of the plaintiff, the district court denied the individual defendants' motion to set aside the verdict on the ground of legislative immunity, a finding the First Circuit later affirmed.  Id. at 47–48, 118 S. Ct. 969–970.

On appeal in Bogan, the United States Supreme Court found that the district court erred in finding that the mayor and city councilman did not enjoy legislative immunity.  Id. at 54–55, 118 S. Ct. at 972–973.  Applying the functional test, the Court reasoned that the ordinance introduced by the mayor and approved by the city council "bore all the hallmarks of traditional legislation" because it "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents."  Id. at 55–

56, 118 S. Ct. at 973.  Further, according to the Court, "[the ordinance] involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office."  Id.  Finally, the Court noted that the mayor's act of proposing the ordinance, and the city councilman's act in voting to approve it were formally legislative actions.  Id. at 55–56, 118 S. Ct. at 973.  Thus, the Court found that the individual officials were entitled to absolute legislative immunity and reversed the judgment of the First Circuit.  Id. at 56, 118 S. Ct. at 973.

By contrast, in Harhay v. Town of Ellington Bd. of Educ., *supra*, the Second Circuit found that a vote by a local board of education to deny a request by a teacher who had been laid off to be reappointed to a teaching position was not legislative in nature.  323 F.3d at 209.  It reasoned that the Board "did not engage in the kind of broad, prospective policymaking that is characteristic of legislative action."  Id. at 211.  Rather, the vote was only directed at a particular teacher "and did not implicate any Board policy."  Id.  Accordingly, the Circuit Court affirmed the district court's decision to deny the board members' motion for summary judgment on the basis of legislative immunity.  See id.; see also Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158, 174 (E.D.N.Y. 2014) (Spatt, J) (finding that the board members' vote to terminate a teacher's position was administrative and therefore, they were not entitled to legislative immunity); Lilly v. Lewiston-Porter Cent. Sch. Dist., 853 F. Supp. 2d 346, 358 (W.D.N.Y. 2011) ("The alleged conduct of Defendant Schaubert in trumping up charges of misconduct against a fellow Board member does not fall into this category [of absolute legislative immunity].");  Campana v. City of Greenfield, 38 F. Supp. 2d 1043, 1049 (E.D. Wis. 1999) ("The Council's vote allowing Mayor Seider to suspend Campana was not a legislative activity. The Council members' action had no implications for the position of city treasurer in

27

general; the vote was an administrative act narrowly focused on the discipline of a particular city employee.").

In the present case, the allegations in the amended complaint are somewhat inconsistent. For example, the Plaintiff alleges that Johnson informed the Plaintiff that she was going to recommend to the Board that her position as Director of Athletics and Physical Education be abolished for "economic reasons." (See Am. Compl. at ¶¶ 24, 26.) This allegation suggests the Board's decision may have been a policymaking decision that implicated the budgetary priorities of the District and that reached beyond the Plaintiff's employment. Furthermore, the actions of proposing and voting to abolish the Plaintiff's position are formal legislative acts, which weigh in favor of a finding that Johnson and the Board were taking legislative actions. See Bogan, 523 U.S. at 55–56, 118 S. Ct. at 973 (finding that a board's vote to terminate the plaintiff's position was administrative, in part, because "[the ordinance] involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office").

However, there are other allegations which suggest that the Johnson's recommendation to fire the Plaintiff was not part of a broader policy effort. For example, the amended complaint alleges that the Plaintiff was replaced by two other employees, which suggests that the District did not in fact abolish the position of the Director of Athletics and Physical Education; rather, they merely fired the Plaintiff from that position and replaced him with another employee. See Canary v. Osborn, 211 F.3d 324, 331 (6th Cir. 2000) ("[A] job is not abolished under circumstances where the appointing authority simply transfers that job's duties to a new employee to perform.") (internal quotation marks and citations omitted). Furthermore, absent from the record is evidence suggesting that the Plaintiff's termination came at the heels of a

28

District-wide effort to eliminate teaching jobs for budgetary reasons, as was the case in <u>Bogan</u>, where the mayor proposed a city ordinance that eliminated 135 city positions, including the plaintiff's position.  <u>See</u> 523 U.S. at 47, 118 S. Ct. at 969.

Therefore, these allegations suggest that Johnson's recommendation and the Board's vote was more akin to a "discretionary personnel decision," which the Second Circuit has made clear "do[es] not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors."  <u>Harhay v. Town of Ellington Bd. of Educ.</u>, 323 F.3d 206, 210–11 (2d Cir. 2003).

At this stage of the litigation, the Court is required to resolve all plausible inferences in the Plaintiff's favor.  <u>See</u> <u>LaFaro</u>, 570 F.3d at 475.  Accordingly, based upon the allegations before it, the Court cannot state as a matter of law that the Individual Defendants are entitled to absolute legislative immunity.  However, the Court's ruling will not prevent the Individual Defendants from raising the doctrine of legislative immunity again after sufficient discovery and development of the factual record.  <u>See</u> <u>Brown v. New York</u>, 975 F. Supp. 2d 209, 232 (N.D.N.Y. 2013) ("At this stage of the litigation, based upon the sparse record, the Court cannot state as a matter of law that Defendants are entitled to legislative immunity . . . . This ruling does not prevent Defendants from renewing their motion with respect to the applicability of the doctrine of legislative immunity after sufficient discovery and development of the record."); <u>Moxley v. Town of Walkersville</u>, 601 F. Supp. 2d 648, 662 (D. Md. 2009) ("[T]he doctrine of legislative immunity is not uniquely asserted on motions to dismiss. This case will have to await further factual development during pretrial discovery in order to establish a sufficient record to determine the applicability of the doctrine of absolute legislative immunity.").

### 3. The Participation Requirement

Finally, the Defendants assert that the Section 1983 claims against Johnson should be dismissed because the amended complaint fails to allege that "Johnson did anything in her personal capacity that caused the Plaintiff to have his constitutional rights violated." (See the Defs.' Mem. of Law at 10–11.)

In response, the Plaintiff points to allegations that a special assistant to Johnson told the Plaintiff in a conversation that he was a racist shortly before Johnson recommended to the Board that the Plaintiff's position be terminated. (See the Pl.'s Opp'n Mem. of Law at 24–25.) The Court agrees with the Plaintiff for somewhat different reasons.

"It is well settled . . . that the doctrine of *respondeat superior* standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003). In other words, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

Rather, "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct is required." Hayut, 352 F.3d at 753 (citing Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001)). The Second Circuit has stated:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

In the present case, the amended complaint alleges that Johnson informed the Plaintiff that she was going to recommend to the Board that the Plaintiff's position be eliminated; she subsequently made that recommendation to the Board; and the Board voted in favor of Johnson's recommendation.  (See Am. Compl. at ¶¶ at 24, 26, 29.)  Thus, as alleged, Johnson was a key participant in the Plaintiff's allegedly wrongful and discriminatory termination.

As discussed earlier, the Court notes that the Defendants do not challenge the sufficiency of the Plaintiff's wrongful termination claim against the District.  (See the Defs.' Reply Mem. of Law at 1) ("The Defendants do not argue the sufficiency of the Plaintiff's pleading regarding his 42 U.S.C. § 1983 claim.").  In other words, they do not argue that allegations fail give rise to an inference that the District's decision to terminate the Plaintiff's position was motivated at least in part by a District-wide policy of discrimination against white teachers and older teachers.

Thus, assuming that the District's decision was the product of improper discrimination, the Court finds that the allegations suggesting that Johnson facilitated that decision are sufficient to allege plausible Section 1983 claims against her.  See, e.g., Kantrowitz v. Uniondale Union Free Sch. Dist., 822 F. Supp. 2d 196, 218 (E.D.N.Y. 2011) ("[P]laintiff has put forth evidence outlining the personal involvement of both Dr. Lloyd and Dr. Mangum in the decision to abolish plaintiff's position, beginning with the Board and administrator's retreat and culminating with Dr. Lloyd's evaluation of plaintiff. Accordingly, the Court concludes that plaintiff has presented sufficient evidence to overcome a motion for summary judgment on her claims against the individual defendants."); Bender v. City of New York, No. 09 CV 3286 (BSJ), 2011 WL 4344203, at *3 (S.D.N.Y. Sept. 14, 2011) ("[T]o succeed on a Section 1983 claim, a plaintiff

must establish causation by showing that 'defendants participated in, or were 'moving forces' behind, the deprivation.'") (quoting Jeffries v. Harleston, 21 F.3d 1238, 1247 (2d Cir.1994), *vacated and remanded on other grounds*, 513 U.S. 996, 115 S. Ct. 502, 130 L.Ed.2d 411 (1994)).

The Court notes that in their reply memorandum, the Defendants assert that the amended complaint fails to allege that Cross, Hobbs, Brazley, Ray, and Simmons participated in the alleged discriminatory conduct of the District.  (See the Defs.' Reply Mem. of Law at 5–6.) However, the Defendants did not make this argument in their initial memorandum of law; rather, they focused their "participation" argument exclusively on the Defendant Johnson.  (See the Defs.' Mem. of Law at 10–11.)

As described earlier, courts often refuse to consider new arguments made by parties in their reply briefs.  See Wells Fargo Bank, Nat. Ass'n v. Kokolis, No. 12-CV-2433 DLI JO, 2013 WL 789448, at *4 (E.D.N.Y. Mar. 1, 2013) ("It is axiomatic that 'new arguments may not be made in a reply brief,' and this Court cannot rely on such arguments to dismiss the complaint." (quoting Bayer Schera Pharma AG v. Sandoz, Inc., 2010 WL 1222012, at *6 n. 11 (S.D.N.Y. Mar.29, 2010)); see also Ernst Haas Studio, Inc., 164 F.3d at 112 (same).

Here too, the Defendants argued for the first time in their reply brief that the Section 1983 claims against Cross, Hobbs, Brazley, Ray, and Simmons should be dismissed because the amended complaint does not sufficiently allege that they participated in the Plaintiff's allegedly wrongful termination.  Accordingly, out of fairness to the Plaintiff, who has not had an opportunity to respond to this argument, the Court, in its discretion, declines to consider the Defendants' new argument here.

In sum, the Court finds that the Plaintiff's Section 1983 claims are timely; the amended complaint alleges a distinct constitutional violation; the Plaintiff has sufficiently pled that the

Individual Defendants are not entitled to legislative immunity; and the allegations in the

amended complaint plausibly allege Johnson's participation in the Plaintiff's allegedly wrongful

termination.  For these reasons, the Court denies the Defendants' motion to dismiss the

Plaintiff's Section 1983 claims.

**E. As to the Plaintiff's NYSHRL Claims**

Finally, the Defendants argue that the Plaintiff's NYSHRL claims for discrimination are

time-barred; and in the alternative, the claims against the Individual Defendants should be

dismissed because the Plaintiff did not satisfy the notice of claim requirement for claims against

school officers.  (See the Defs.' Mem. of Law at 7–9.)

The Plaintiff responds that the statute of limitations was tolled after he filed his charges

of discrimination with the EEOC and the NYSDHR and therefore, his NYSHRL claims are not

time-barred.  (See the Pl.'s Opp'n Mem. of Law at 18–19.)  He further argues that he did not

have to comply with the notice of claim requirement because his claims fell into an

indemnification exception.  (See id. at 19–20)  He also contends that the Individual Defendants

obtained sufficient notice of his claims against them through the 50-h hearing and therefore, a

formal notice of claim was not necessary.  (See id. at 21–22.)

The Court agrees that the Plaintiff's NYSHRL claims are time-barred and therefore, need

not reach the Defendants' notice of claim argument.

In general, the statute of limitations for NYSHRL claims is three years.  See Koerner v.

State, 62 N.Y.2d 442, 446, 467 N.E.2d 232, 233 (N.Y. 1984) (Wachtler, J) ("[T]he institution of

a civil action to recover damages pursuant to the Human Rights Law for discriminatory

discharge by a private employer is governed by the three-year Statute of Limitations contained in

CPLR 214 (subd. 2)[.]"); Goldin v. Engineers Country Club, 54 A.D.3d 658, 659, 864 N.Y.S.2d

43, 45 (Second Dep't 2008) ("Rather, the complaint alleged discrimination based on sex under the Human Rights Law (Executive Law § 296), which allows parties to commence an action against discriminatory places of public accommodation, and the applicable statute of limitations is three years.").

However, Subdivision 2-b of Section 3813 of the New York Education Law ("NYEL") states, "no action or special proceeding shall be commenced against any entity specified in subdivision one of this section more than one year after the cause of action arose."  Subdivision 1, in turn, applies to "any school district, board of education, board of cooperative educational services, [or] school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four"; and to "any officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four."  N.Y. Educ. Law § 3813(1).

Section 2(13) of the NYEL defines school "officers" as including, among others, "a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district"; a "superintendent of schools"; and "a district superintendent."

Read together, the plain language of these NYEL provision clearly applies a one-year statute of limitations to the Plaintiff's NYSHRL claims against the District; Johnson, who was the Superintendent of the District; and Cross, Hobbs, Brazley, Ray, and Simmons — all of whom were members of the Board.  See Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367, 373, 880 N.E.2d 6, 10 (2007) (finding that the "one-year limitation prescribed in Education Law § 3813(2–b) should govern discrimination claims against a school district"); Eaton v. Wayne

Cent. Sch. Dist., 25 F. Supp. 3d 370, 373 (W.D.N.Y. 2014) ("An action against a school district, its Board of Education or its officers pursuant to the NYHRL must be brought within one year.") (citing N.Y. Educ. Law § 3813).

Generally, "'[a] cause of action for discrimination under N.Y. Human Rights Law accrues and the limitation period begins to run on the date of the alleged discriminatory act.'" Flaherty v. Massapequa Pub. Sch., 752 F. Supp. 2d 286, 293 (E.D.N.Y. 2010) (quoting Queensborough Cmty. Coll. of City Univ. of N.Y. v. State Human Rights, 49 A.D.2d 766, 372 N.Y.S.2d 722, 723 (2d Dep't 1975)); cf. Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992) ("'[T]he timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision.'") (quoting O'Malley v. GTE Serv. Corp., 758 F.2d 818, 820 (2d Cir. 1985)).

Applying this standard here, the Plaintiff commenced this action on August 17, 2015. Thus, any discriminatory acts that occurred on or before August 17, 2014 would be time-barred because they did not accrue within one year of the Plaintiff commencing the present action.

The Plaintiff's discrimination claims under NYSHRL are premised on Johnson's recommendation to the Board, and the Board's allegedly discriminatory vote to terminate the Plaintiff's position on June 20, 2013.  (See Am. Compl. at ¶ 48–53.)  Thus, his NYSHRL discrimination claims arising from the Plaintiff's termination accrued at the latest on June 21, 2013, when his termination became effective.  That is more than a year before the limitations period expired on August 17, 2014 and therefore, the Plaintiff's NYSHRL claims arising from his termination are clearly time-barred. See Floratos v. Int'l Leadership Charter Sch. Inc., No. 09 CIV. 9136 BSJ, 2011 WL 291852, at *2 (S.D.N.Y. Jan. 20, 2011) ("In this case, Plaintiff's cause of action accrued on May 16, 2008, the date Floratos was terminated from New Heights

Academy as a result of the actions of ILCS and Lopez . . . . Plaintiff filed suit on November 2, 2009, well over a year after the date of accrual."); Smith v. Tuckahoe Union Free Sch. Dist., No. 03 CIV. 7951 (PGG), 2009 WL 3170302, at *11 (S.D.N.Y. Sept. 30, 2009) ("Smith's cause of action accrued on January 7, 2002–the day the School District told Smith that it was terminating his employment . . . . Because Smith brought suit in this Court on October 8, 2003 more than a year after his cause of action accrued—his state law claims are time-barred and will be dismissed.").

The Plaintiff contends that his NYSHRL claims are timely because his claims were tolled from after he filed a charged of discrimination with the NYSDHR and the EEOC on May 30, 2014, to May 19, 2015, when he received a right to sue letter from the EEOC. (See the Pl.'s Opp'n Mem. of Law at 18–19.) The Court disagrees for two reasons.

First, although the Second Circuit appears not to have directly addressed the issue, most lower courts have held that claims against school districts and school officers are not tolled by filings with the EEOC. See Ayazi v. New York City Dep't of Educ., No. 08-CV-2456 MKB, 2012 WL 4503257, at *8 (E.D.N.Y. Sept. 28, 2012) ("However, Ayazi is advised that the statute of limitations for claims against a school district is one year . . . . Furthermore, a plaintiff's filing of an EEOC complaint does not toll the running of the statute of limitations."); Smith v. Tuckahoe Union Free Sch. Dist., No. 03 CIV. 7951 (PGG), 2009 WL 3170302, at *11 (S.D.N.Y. Sept. 30, 2009) ("Even if Smith had not waived the argument that his EEOC charge tolled the statute of limitations set forth in Education Law § 3813(2–b), this Court would not be inclined in light of Amorosi and the clear intent of the New York legislature to limit lawsuits against school districts — to read such a provision into the statute."); Field v. Tonawanda City Sch. Dist., 604 F. Supp. 2d 544, 579 n.26 (W.D.N.Y. 2009) (same).

36

Second, the Plaintiff's termination became effective on June 21, 2013.  On May 29, 2014, the Plaintiff filed a charge with the NYSDHR and the EEOC.  Thus, at the time he filed his charge with the EEOC, the Plaintiff had twenty-three days left before the one-year statute of limitations on his wrongful termination claim ended.  On May 19, 2015, the Plaintiff received a right to sue letter from the EEOC.  (See the EEOC Right to Sue Letter.)  As such, even assuming *arguendo* that the Plaintiff's claims were tolled during this period, the tolling period ended on May 19, 2015, and he had twenty-three days from that date within which to file his NYSHRL claims against the District in court or else his claims would be time-barred under the NYEL.

The Plaintiff filed a complaint in this Court on August 17, 2015, more than twenty-three days after he received a right to sue letter from the EEOC.  Therefore, even if the Plaintiff's claims were tolled during the period after he filed his EEOC complaint, his claims would still be time-barred.

The Court notes that the amended complaint does contain several alleged adverse employment actions within the limitations period.  Specifically, the amended complaint states that on October 6, 2014, the Plaintiff applied for the position of Dean of Students and was not hired.  (Am. Compl. at ¶ 39.)  Instead, the District hired O'Neill Glenn, a younger and allegedly less experienced African American, for the position.  (Id.)  In addition, the Plaintiff alleges that on March 20, 2015, and May 26, 2015, he applied for the positions of Enrollment Ombudsman; Assistant Enrollment Ombudsman; Elementary School Principal; and Middle School Principal.  (Id. at ¶¶ 39, 41–45.)  However, the District did not hire him for any of these positions.  (See id.)

Even assuming that these allegations could form the basis of plausible race discrimination claims, they would still fail to state a claim because the Plaintiff did not include these allegations, or any indication of a failure to hire claim, in the notice of claim that he filed against the District.

37

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). "Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action." Am. Tel. & Tel. Co. v. New York City Dep't of Human Res., 736 F. Supp. 496, 499 (S.D.N.Y. 1990); see also Murray v. LeRoy Cent. Sch. Dist., 67 N.Y.2d 775, 776, 491 N.E.2d 1100, 1100 (N.Y. 1986) (affirming the dismissal of claims against a school district because "[t]here was no compliance with the notice of claim requirements of Education Law sec. 3813 — neither substantial compliance with requirements as to form nor strict compliance with the requirements of notice").

In that regard, 3813(1) of the NYEL states:

No . . . claim against the district. . . shall be prosecuted against any school district . . . or any officer of a school district . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law § 3813(1) (emphasis added).

In the present case, on September 19, 2013, the Plaintiff filed a notice of claim with the District based solely on his allegedly discriminatory termination. The Notice of Claim stated, "Respondent's unlawful and discriminatory behavior commenced in or around June 2013, and continues to the present day and includes, but is not limited to, Respondents' wrongful termination of Claimant, through Respondent's Board vote terminating Claimant effective June 21, 2013, and identified through mailing dated June 24, 2013." (Not. of Claim at 2.)

The allegations arising from the District's alleged failure to hire the Plaintiff for four other positions occurred nearly two years after the Plaintiff first filed a notice of claim. There is

no indication that the Plaintiff filed an amended notice of claim with the District within three months of the District's allegedly discriminatory hiring decisions.  Nor did he request an extension within which to file an amended notice of claim.

Therefore, even if these allegations were timely, they still could not form the basis of a plausible discrimination claim.  Grassel v. Dep't of Educ. of City of New York, No. 12 CV 1016 (PKC), 2015 WL 5657343, at *11 (E.D.N.Y. Sept. 24, 2015) ("Grassel's Complaint does not plead that his EEOC charge was served on the DOE's governing body or that it was served within three months of his January 18, 2011 exam by Dr. Garner. Thus, Grassel's NYSHRL claims must be dismissed for failure to comply with Education Law § 3813."); Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 368 (W.D.N.Y. 2010) ("This failure to serve the appropriate body is fatal to Plaintiff's NYHRL claim against the School District, the Board of Education, Young, and Simon.").

In sum, the Court finds that the Plaintiff's NYSHRL discrimination claims are time-barred and grants the Defendants' motion to dismiss those claims.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is denied with regard to the Plaintiff's Section 1983 claims and granted with regard to the Plaintiff's NYSHRL claims.  Thus, the only remaining claims in this action are the Section 1983 claims.

This case is referred to United State Magistrate Judge A. Kathleen Tomlinson for discovery.  The Clerk of the Court is directed to terminate docket entry number 14.

Dated: Central Islip, New York.
August 30, 2016

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge